1                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF OHIO
2                          EASTERN DIVISION

3
     UNITED STATES OF AMERICA,        Case No. 5:22-cr-244
4                                     Cleveland, Ohio
                Plaintiff,
5
          vs.                         WEDNESDAY, JANUARY 4, 2023
6
     CALVIN R. ROGERS,
7
                Defendant.
8

9
                 TRANSCRIPT OF SENTENCING PROCEEDINGS
10          BEFORE THE HONORABLE BRIDGET MEEHAN BRENNAN
                   UNITED STATES DISTRICT JUDGE
11

12
     APPEARANCES:
13
     For the Government:        Payum Doroodian,
14                              *Assistant United States Attorney*

15
     For the Defendant:         Jeffrey B. Lazarus,
16                              *Assistant Federal Public Defender*

17
     For Probation:             Biagio Giaimo
18

19

20   Chief Court Reporter:      Sarah E. Nageotte, RDR, CRR, CRC
                                United States District Court
21                              801 West Superior Avenue
                                Court Reporters 7-189
22                              Cleveland, Ohio 44113
                                Sarah_Nageotte@ohnd.uscourts.gov
23

24

25      Proceedings recorded by mechanical stenography, transcript
            produced with computer-aided transcription.

```
 1                    WEDNESDAY, JANUARY 4, 2023

 2                           - - -

 3              (Proceedings commenced at 2:32 p.m.)

 4                           - - -

 5              THE COURT:  All right.  We are here today in

 6     United States versus Calvin Rogers, case number 5:22-cr-244.

 7          Present in the courtroom is Mr. Rogers.

 8          Good afternoon.

 9              THE DEFENDANT:  Good afternoon, Your Honor.

10              THE COURT:  His counsel, Mr. Lazarus.

11              MR. LAZARUS:  Good afternoon, Your Honor.

12              THE COURT:  Good afternoon.

13          Assistant U.S. Attorney Payum Doroodian.

14              MR. DOROODIAN:  Good afternoon, Your Honor.

15              THE COURT:  Good afternoon.

16          And Probation Officer Biagio Giaimo.

17              PROBATION OFFICER:  Good afternoon.

18              THE COURT:  All right.  Good afternoon.

19          So in preparation for this hearing, I have certainly

20     reviewed the final presentence report.

21          I understand everyone has a copy of that; correct?

22              MR. LAZARUS:  That's correct, Your Honor.

23              MR. DOROODIAN:  Yes, Your Honor.

24              THE COURT:  I have also received and reviewed

25     the defendant's sentencing memorandum and exhibits.  Those
```

1    include the declaration for the -- from the firearm owner,

2    the trace report regarding ownership, multiple certificates

3    of completion, and multiple letters of support.  So thank

4    you, Mr. Lazarus, for those.

5         From the Government, I have received the motion for

6    preliminary forfeiture and the draft order.

7         Is there anything else that either party would like to

8    present to the Court before we proceed further?

9         On behalf of the Government.

10                   MR. DOROODIAN:  No, Your Honor, just argument.

11                   THE COURT:  Thank you.

12                   MR. LAZARUS:  No, Your Honor.

13                   THE COURT:  All right.  So, Mr. Lazarus, you

14    indicated that you have the copy of the final presentence

15    report.

16         Have you and your client read and discussed the

17    report?

18                   MR. LAZARUS:  Yes, we have, Your Honor.

19                   THE COURT:  Thank you.

20         And, Mr. Rogers, did you have enough time to review

21    the report and discuss it with your attorney?

22                   THE DEFENDANT:  Yes, Your Honor.

23                   THE COURT:  Very well.

24         So, Mr. Lazarus, I am -- I note that you have

25    indicated an objection to the specific offense

1   characteristic for the stolen firearm and that is, at this

2   time, unresolved.  I see Probation has responded to that as

3   well.

4       Having read the objection in the report and also the

5   information you provided in your sentencing memorandum, is

6   there anything else that you wish for the Court to know?

7           MR. LAZARUS:  Your Honor, it's our position

8   that this firearm wasn't actually stolen, that Mr. Rogers

9   was driving a car that he had lawful possession of, he was

10  borrowing a car from his friend.  We have a declaration from

11  the owner of the car and his friend who said he was lawfully

12  in possession of the car because he was going to repair it.

13      During that possession of the car, he did possess the

14  firearm.  He does admit that he did discover it and that is

15  the substance of this offense, but that doesn't render the

16  firearm stolen.

17      I understand in the presentence report the probation

18  officer says that Mr. Rogers made admissions that the car

19  was stolen.  Those admissions were false.  And we know that

20  they were false because he did admit to the -- he did tell

21  the police that he did steal the car, but he was doing that

22  to protect his friend who he thought might get in trouble

23  for his illegal act.  But we know that what he said to the

24  police wasn't true and, therefore, it's not dispositive in

25  this case.

1          Just because he told the police that he stole the car,

2     which was a false statement, doesn't mean that the firearm

3     was stolen.  In fact, the firearm owner, who is the car

4     owner, did say that he did have the car lawfully.  And that

5     while he wasn't able to possess the firearm, she did explain

6     to the Court that he did have the car lawfully.

7          To find that this is a stolen firearm would render

8     every illegal possession of a firearm case a stolen firearm,

9     and we think that that just hasn't been proven and that's

10    not the facts in this case, so we would ask the Court to

11    remove the two-level enhancement.

12         Thank you.

13              THE COURT:  Could you just clarify one

14    statement.

15         You said if the Court finds that the firearm here is

16    stolen, that every illegal possession would be a stolen

17    firearms case?

18              MR. LAZARUS:  Maybe not every, but, certainly,

19    every firearm that's found in a car where it wasn't

20    registered to the possessor would be stolen.

21         There's nothing in this case where we have a firearm

22    that's been reported stolen, which we see in other cases

23    where someone -- the firearm was actually stolen from

24    someone's house or someone's car and then ultimately ended

25    up in the hands of a defendant.  In that kind of a case

1    where the firearm is reported stolen and there's a record

2    that it's stolen, then we see the enhancement applied, but

3    that's not this case.

4                THE COURT:  Thank you, Mr. Lazarus.

5         Mr. Doroodian, anything on behalf of the Government as

6    it relates to this particular objection?

7                MR. DOROODIAN:  As it relates to this

8    particular objection, I do agree that, you know, if a case

9    where an individual is reporting something stolen, of

10   course, it's a stolen firearm.  But that's not the end-all,

11   be-all.  It doesn't have to be a reported stolen firearm.

12        In this particular case, he said that he stole the

13   vehicle that contained the firearm.  The owner of the

14   vehicle said that he did not have permission to use it and

15   that the person who had permission to use it was, in fact,

16   her brother.  Both those statements were made at or near the

17   time of the offense.  And I understand now, you know, a year

18   later, the story has sort of changed.

19        I think when we're looking at the standards that we

20   look to apply an enhancement, I believe we have what we need

21   right here for this particular case.  We don't need a

22   reported stolen firearm case in order to attach this

23   enhancement.

24                THE COURT:  Thank you.

25        Officer Giaimo, is there anything else you wish to add

1      on behalf of the Probation Department?

2                    PROBATION OFFICER:  Nothing else, Your Honor.

3                    THE COURT:  All right.  Thank you.

4           In line with what the Government has said -- so I've

5      done research to see where the Sixth Circuit is on this

6      particular enhancement or offense characteristic, and I've

7      reviewed the submissions, the report, I've listened to

8      argument here today.

9           So with respect to this particular two levels as it

10     relates to 2K2.1(b)(4)(A), I find this:  The information

11     about the car and the firearm are set out in paragraph 6 of

12     the PSR and in the probation officer's response to the

13     defendant's objection.

14          So on October 24th of '21, when the car was stopped,

15     Mr. Rogers denied knowing the gun was in the car initially

16     but stated he wasn't supposed to have the car anyway.  The

17     sheriff's deputies noted that, in fact, he used the word

18     stolen when he referenced his possession of the vehicle but

19     then quickly clarified it wasn't stolen per se but that he

20     did not have possession or -- permission from the owner to

21     be driving the vehicle.

22          Mr. Rogers's DNA was ultimately found on the firearm.

23     And he has since admitted his possession of it.  And we also

24     now know that he, in fact, handled it.

25          The owner of the firearm stated that it was --

1       actually twice stated -- that it was the defendant's

2       relative, a Mr. Lumpkin I believe, who had permission to

3       drive the car.  She stated that at the time, or near the

4       time, of the arrest in October and then separately again in

5       April of 2022.  She said that Mr. Rogers did not have her

6       possession -- her permission to be handling or driving the

7       vehicle or handling or possessing the firearm.

8            I think that those statements were properly given more

9       weight by the Probation Department when they included this

10      two levels because they were, in fact, made closer in time

11      to the offense.

12           And the declaration that was provided as Exhibit A to

13      the sentencing memorandum is not dated, but it does reflect

14      November of 2022.  There's no actual date that was written

15      on, but November of 2022.  And the Court notes that this is

16      challenging because she is a close friend of the

17      defendant's.  But her statement is different but made closer

18      in time to notification that this particular offense

19      characteristic would be included in the report.

20           So the Court finds the owner's two prior statements to

21      be more credible and to be worthy of more weight in this

22      instance for the added reason that they're also consistent

23      with the defendant's statements that he made to the Portage

24      County sheriff's deputies:  He did not have permission to

25      drive the car; he did not have permission to handle or

1    possess the firearm.

2         How that now relates, though, as the Court considers

3    case law in this circuit, the Court notes that the two-level

4    increase, there's two cases the Court is relying on:

5    Primarily, *United States versus Jackson*, 401 F.3d 747, and

6    also was persuaded by the Sixth Circuit's decision in

7    *U.S. versus Chambers*.  It's a 2015 case.

8         In *Jackson*, the Court held that the firearm

9    characteristic applied even in situations where the firearm

10   was ultimately going to be returned to the owner.  I agree

11   with the Government.  It being noted as stolen, there being

12   a report that it was stolen is not determinative of this

13   particular issue.  Where the facts as assessed demonstrate

14   an intentional deprivation of an owner's possessory right

15   without the owner's consent, the increase applies.

16        *Chambers* is actually very similar to what the Court is

17   reviewing here with these facts.  Chambers was found in

18   possession of a firearm that he acknowledged he had without

19   his girlfriend's permission.  The girlfriend also stated

20   that he did not have her permission to have the firearm

21   which she had kept locked up.  And here, similarly,

22   Chambers' girlfriend did not believe that the gun was

23   stolen.  But as the Sixth Circuit found, there was no record

24   evidence that Chambers received permission, directly or

25   indirectly, to possess the firearm.  That's the situation

1    the Court faces here with these facts.

2         As for dishonestly or secretly possessing the firearm,

3    the Court credits the early statements of the firearm's

4    owner, as I've stated before.  And we know that Mr. Rogers

5    knew the gun was in the vehicle, handled it, because his DNA

6    is on it, and has acknowledged here in the sentencing

7    memorandum he did not return it even though he knew he was

8    not entitled to possess it.

9         So consistent with *Jackson* and *Chambers*, the Court

10   finds that this two-level offense characteristic does apply

11   to the facts in this case.

12        It is also persuaded by the Eighth Circuit decision in

13   *United States versus Bates* that a broad definition of stolen

14   is required or consistent with the guideline purposes and

15   can even apply to a situation where a firearm is found and

16   is not returned to the owner.

17        So, with that, the Court will overrule the objection

18   and include that in its ultimate guideline calculation.

19        Mr. Lazarus, I also note in your sentencing

20   memorandum, although not an objection to the PSR, but in

21   your sentencing memorandum, you raise 5H1.3 as a basis to

22   depart.  I'd like to resolve the departures now so I can

23   calculate the guidelines properly.  I understand, certainly,

24   that if the Court doesn't exercise discretion to depart

25   under 5H1.3, it can, obviously, consider that for 3553(a).

1        But while I'm considering that particular request for

2   a departure, is there anything else you wish to add beyond

3   what's in your sentencing memo?

4                    MR. LAZARUS:  No, Your Honor.

5        We think we'll cover it as far as mitigation, but as

6   far as the departure request, I think it's covered.

7        Thank you.

8                    THE COURT:  Thank you.

9        Anything from the Government on that?

10                   MR. DOROODIAN:  No, Your Honor.

11                   THE COURT:  All right.  On behalf of

12  Probation.

13                   PROBATION OFFICER:  No, Your Honor.

14                   THE COURT:  Very well.

15       I agree that that is -- it's a harder call under 5H1.3

16  because, in that situation, the guidelines recommend a

17  departure for mental health related reasons.  The Court has

18  to make a finding that the mental health reason is

19  significantly distinguishable or presents itself to an

20  unusual degree.

21       And I certainly find, sir, that you have witnessed

22  horrific violence and been a victim of it, but because

23  you've been able to remain engaged with your children and to

24  be gainfully employed, it is not the kind of mental health

25  challenge that the guidelines contemplate for that

1    particular departure, so the Court will not be departing on

2    that basis, but -- even though it knows it has discretion

3    to, but it will consider those arguments when it considers

4    the sentence or the Section 3553(a) factors.

5          Do you understand what I'm saying, Mr. Rogers?

6                THE DEFENDANT:  Not -- not really.

7                THE COURT:  Okay.  Mr. Lazarus, do you want a

8    moment to speak to your client?

9                MR. LAZARUS:  Yes.  Thank you.

10                   (Discussion off the record)

11                MR. LAZARUS:  Thank you, Your Honor.

12                THE COURT:  Thank you.

13          Are you prepared to continue then, Mr. Lazarus?

14                MR. LAZARUS:  Yes, we are.

15                THE COURT:  Okay.  Thank you.

16          All right.  And I also note in the presentence report

17    that Probation recognized that the Court could, in fact,

18    elect to depart upward beyond what the recommended or

19    advisory guideline range could be, and that would be under a

20    specific section called 4A1.3.

21          The Court is going to decline that.  Again,

22    recognizing it has the discretion to do so, it will not be

23    departing upward on that basis.  But, again, criminal

24    history and factors that could support that departure will

25    be considered in its overall assessment of the sentencing

1    factors here.

2        So having resolved those issues with respect to the

3    guideline calculation, the Court finds as follows with

4    respect to the presentence report here:

5        Beginning at paragraph 10, the 2021 guidelines manual

6    will apply.  The base offense level is 20, because, under

7    2K2.1(a)(4)(A), the defendant was previously convicted of

8    domestic violence, an F-3, under Ohio Revised Code Section

9    2919.25(A), in Portage County Common Pleas Court case number

10   2011-CR-783 on February 16th of 2012.

11       The specific offense characteristic for possessing a

12   stolen firearm, under 2K2.1(b)(4)(A), the Court will

13   increase the levels by two pursuant to that section.

14       There are no victim related adjustments.  There's no

15   adjustment for role in the offense.  There's no adjustment

16   for obstruction of justice.

17       So the adjusted offense level is 22.

18       There are no Chapter 4 enhancements.

19       But the Court does need to resolve acceptance of

20   responsibility.  The Court finds the defendant has clearly

21   accepted responsibility for the offense; accordingly, the

22   offense level is decreased by two levels, pursuant to

23   Section 3E1.1(a).

24       With respect to that final level under 3E1.1, how does

25   the Government so move?

1          MR. DOROODIAN:  The United States does move

2     for that additional level --

3          THE COURT:  Thank you.

4          MR. DOROODIAN:  -- in this case.

5          THE COURT:  That motion is granted.

6     So the total offense level is 19.

7     Moving now to the defendant's criminal history.  This

8     begins at paragraph 22 and continues to paragraph 50.  But

9     in reviewing the adult criminal convictions, the Court

10    notes, and it's stated in paragraph 37, that the criminal

11    convictions result in a subtotal criminal history score of

12    ten.

13    The defendant committed this particular offense while

14    under a probationary sentence, a five-year probationary

15    sentence I believe, in Cleveland Municipal Court case number

16    2018-CRB-10580, so two additional points will be added.

17    The total history or -- total criminal history score

18    is 12, and according to the sentencing table and the

19    guidelines, a criminal history score of 12 establishes a

20    criminal history category of V.

21    And what that amounts to is a guideline range, an

22    advisory guideline range, of 57 to 71 months.

23    Are there any objections to be stated at this time

24    with respect to this or the presentence report, Mr. Lazarus?

25          MR. LAZARUS:  No, Your Honor.

1          THE COURT:  Thank you.

2      Mr. Doroodian.

3          MR. DOROODIAN:  No, Your Honor.

4          THE COURT:  All right.  Very well.

5      The Court adopts the final presentence report.

6      And we move now at this point in the hearing to talk

7  about those Section 3553(a) factors.

8      So on May 11th of 2022, Mr. Rogers was charged in this

9  matter under Count 1 for being a felon in possession and in

10  Count 2 for possessing a firearm after having been convicted

11  of a misdemeanor domestic violence offense.

12      At the time of the change of plea, the Government had

13  indicated that because there were issues with respect to

14  multiple charges under subsection (d) or (g) of 922, the

15  Government was going to move to dismiss a count.

16      Mr. Doroodian, which count does the Government intend

17  to dismiss?

18          MR. DOROODIAN:  The United States would like

19  to move to dismiss Count 2 based on those multiplicity

20  concerns.

21          THE COURT:  Thank you.

22      We clarify that now so the Court has that information

23  as it proceeds to sentencing.  The Court grants that motion

24  to dismiss Count 2.  We will proceed to sentencing now on

25  only Count 1.

1          So, Mr. Rogers, I must now consider the relevant

2     factors set out by Congress at Section 3553(a), as we've

3     referenced already today, and I need to ensure that what is

4     imposed in terms of a sentence is sufficient, but not

5     greater than necessary, to comply with the purposes of

6     sentencing.

7          And the purposes of sentencing include the need to

8     reflect the seriousness of the crime, to promote respect for

9     the law, and provide just punishment for the offense.  The

10    sentence is also -- it also needs to be designed to deter

11    future criminal conduct, protect the public from future

12    crimes, and promote rehabilitation.

13         In addition to the guidelines and the policy

14    statements, the Court's also directed and must consider

15    certain factors.  Those are the nature and circumstances of

16    the offense, your personal history and characteristics, the

17    need to avoid unwanted sentencing disparities among

18    similarly-situated defendants, and also the types of

19    sentences available.

20         And it also has to consider the guidelines, but the

21    Court notes, and I've said it before, the guidelines are

22    advisory.  And there is no plea agreement in this case, so

23    you and your attorney are free to argue for whatever you

24    think is an appropriate sentence, and the Government is free

25    to do the same.

1          So, at this time, the Government is invited to address

2     the Court as to what an appropriate sentence should be.

3          Mr. Doroodian.

4               MR. DOROODIAN:  Thank you, Your Honor.

5          Of course, as this Court knows, in considering the

6     factors in this case, the factors in 3553(a), looking at the

7     nature and circumstances of the offense, the first thing

8     that pops out at me is the minimization, really, in his own

9     acceptance of responsibility.

10          This isn't just a case of an individual who just

11     possessed a firearm or, as he says, accidentally possessed a

12     firearm.  It's a lot more than that because of the

13     individual that we have in this case.

14          As the Court's noted, he not only possessed the

15     firearm, he handled the firearm.  He had DNA in it.  He told

16     police there was not one in the chamber.  He clearly was

17     familiar with the firearm.  And that is very concerning when

18     we look at the history and characteristics of the offender

19     here, and that, which really pops out, looking at his

20     history and characteristics, he's 39 years old, he has been

21     gainfully employed before, he has some education, but, then,

22     you look at his criminal history, and two big themes pop

23     out.

24          You have guns and violence across 14 cases that led to

25     convictions, across six total probation violations, likely

1    because a lot of these convictions overlapped, which means

2    while he was on probation for one offense, he clearly was

3    committing another offense.  Guns and violence.  This

4    person, looking back at his criminal history, had weapons

5    under disability as early as 2005 when he had his attempted

6    kidnapping.  He served three years.

7         Then, in 2010, he has a domestic violence conviction

8    where he choked a woman and broke her back.  In 2011 -- and,

9    again, in 2011, a burglary, same woman, breaks into her

10   house at night, refuses to leave.  He does serve a

11   multiple-year sentence and he does, thankfully, start his

12   programs into anger and rage.  But, unfortunately, that does

13   not appear to make a difference.

14        Going into 2011 to 2012, he has numerous convictions

15   where he is alleged to have, and convicted of, beating a

16   woman, making her bleed, making swelling in her head, making

17   numerous threats to women.  He gets out of custody in 2012,

18   he starts his probation.  2014, there's an allegation that

19   he threatened to kill someone.  2016, '19, and '20, domestic

20   violence, violation of probation or protection orders,

21   violation of protection order.

22        2021, in this case, he has a firearm again.  And then,

23   not just six months later, he catches another case.  After

24   the events in this case, he catches another case where he

25   alleges to have threatened another woman and threatens to

1    blow her head off with a firearm that he is alleged to have.

2        I think, based on this history and based on his

3    penchants to keep returning to guns and violence, guns and

4    violence, I think one thing is pretty sure:  No matter what

5    sentence we give, there's a very high probability that he's

6    going to go back, right back to guns and violence, guns and

7    violence, like he's been doing for the last 18 years.  And

8    this is why we have a 922(g), not to just, you know, punish

9    possessors, but to protect.

10        And as this Court knows, to look at the factors in

11   this case, to look at reflecting the seriousness of the

12   offense, promoting respect for the law, affording

13   deterrence, which not just to him -- which may be difficult

14   for him based on his history -- but also to others, and to

15   protecting the public, the appropriate sentence I believe in

16   this case, to cover all the factors and also to give him a

17   fair opportunity for rehabilitation -- because, quite

18   frankly, those two years of custody in 2012 where he did

19   complete programs appears to be the only attempt at

20   rehabilitation in his entire history -- I think a longer

21   sentence is necessary to meet all the factors, including

22   rehabilitation, and I would recommend a sentence of at least

23   71 months in this case, which is a high end of the

24   guidelines.

25        Based on all the circumstances in this case, because

1    there is a genuine, deliberate need to protect people from

2    someone who attacks people, attacks women, threatens to kill

3    women, and possesses firearms, and, quite frankly, if we

4    don't do that, we risk something far worse than just a

5    beating.

6            Thank you, Your Honor.

7                    THE COURT:  Thank you, Mr. Doroodian.

8        Mr. Lazarus, do you wish to speak at this time?

9                    MR. LAZARUS:  Yes.  Thank you, Your Honor.

10        Your Honor, we're asking that this Court vary downward

11   from the guidelines range.

12        Mr. Doroodian talked a great length about Mr. Rogers'

13   criminal history and the specifics related to his prior

14   offenses, but he's not being sentenced today on those prior

15   convictions.  He has already been sentenced for those and

16   he's already received criminal history points and increases

17   in his base offense level, and we believe that the facts and

18   the nature of his prior convictions are already taken into

19   account in fashioning his sentencing guidelines.

20        He starts at a base offense level of 14, but he's

21   getting six levels -- six levels is significant -- because

22   of a prior domestic violence.  And each and every one of the

23   prior offenses that Mr. Doroodian referenced, he's given

24   criminal history points for, and those increase his criminal

25   history score to a V.

1          Mr. Doroodian also referenced a number of cases that

2     were dismissed, so -- and I'm not sure those would be proper

3     before the Court as those cases were dismissed.  But his --

4     his range does reflect a lot of Mr. Doroodian's concerns.

5          Mr. Rogers does recognize that he has prior offenses.

6     He knows that he's done wrong in the past.  And in order to

7     figure out what the appropriate sentence is and how all the

8     3553(a) factors come into play, we want to back up to a

9     little -- to before Mr. Rogers started committing these

10     offenses and let the Court know a little bit about the kind

11     of person he is and the reasons why he has been struggling

12     with the ability to control his behavior and make --

13     continue to make bad decisions.

14          Mr. Rogers is 39 years old now.  He grew up in inner

15     city Cleveland.  His mother did her best to try to provide

16     for him and his siblings, but she was working full-time, and

17     his father was never in the picture, and had trouble making

18     ends meet.  And he was in a poor neighborhood where crime

19     and violence were rampant, where gangs and drugs and other

20     type of bad influences were surrounding, and at a -- at a

21     young age, Mr. Rogers was exposed to gun violence.  He was

22     exposed to people and his neighbors being killed, people

23     being shot.  He was even shot himself as a young adult.  So

24     gun violence is no stranger to Mr. Rogers, as he's been the

25     victim of it and it's been a running theme in his life.

1        And he wants the Court to understand that because he

2    knows now, as he's getting older and as he's had time to

3    reflect while at CCA, that he knows that his judgment making

4    is poor.  He knows that he needs help.  And he's asking the

5    Court for help.  He knows -- and he has had opportunities at

6    CCA to take rehabilitative classes, and the classes we have

7    provided certificates of have helped enlighten him and given

8    him a perspective about his poor decision-making and to let

9    him know that he has been going down the wrong path and that

10   he wants to change it so that he can be a better father to

11   his children and a more productive citizen.

12        And we know that Mr. Rogers is capable of doing good

13   things.  And as you read the letters of support that were

14   provided, Mr. Rogers' friends and family do talk about that

15   he is caring, that he does want to do better for the

16   community, that he has been giving and charitable to others

17   around him and to his children, that he has worked and he

18   has been employed and that he has a job waiting for him, I

19   think by one of the letters that is indicated.

20        But something has gone wrong, that Mr. Rogers

21   recognizes that sometimes when he is in situations with a

22   girlfriend or with a female, or situations in this case, is

23   that he's making the wrong decisions.  And he knows that.

24   And he believes that it is a part of his mental health

25   issues.  He believes that he has significant mental health

1    issues.  He believes he has some sort of post-traumatic

2    stress disorder that has led to him having trouble making

3    the right decisions, having poor judgment, being angry when

4    he shouldn't be, and having improper reactions.  He knows

5    that those are his fault and he wants to address them.

6         Taking classes at CCA has definitely helped him, but

7    he realizes that this all sort of came to a head recently

8    when he lost his mother and he lost his two uncles, and he

9    believes that the stress of losing those family members had

10   a significant impact upon his thinking, and when faced with

11   the situation in this case, where he was borrowing his

12   friend's car and, along with his cousin Sean, to get repairs

13   for it, and he did discover that there was a gun in the car.

14   He realizes that he -- he had choices and he knows he made

15   the wrong choices.  He knows he should have immediately

16   called his friend and said:  There's a gun in this car, I

17   need to get it back to you.  He didn't do that.  And he

18   understands that his judgment was wrong and he understands

19   that that's why he's here and that's why he's going to be

20   sentenced to prison today.

21        But in consideration of all of his mental health

22   issues, his entire history, we believe that that is a reason

23   for the Court to vary downward below the sentencing

24   guideline range.  Everything about his prior convictions

25   that Mr. Doroodian spoke of have been taken into account and

1     that's not a reason to give him a higher sentence or go

2     above the guidelines range.  But his mental health issues,

3     his decision-making issues, his letters of support, and the

4     certificates that he has done to rehabilitate himself while

5     at CCA are reasons why this Court should vary downward, why

6     this Court should find that he is not deserving of a

7     guideline sentence.

8          And even a sentence below the guideline range will be

9     a sentence that far exceeds any sentence he's ever

10    previously received, so the message will be clear to him and

11    it will protect the community, but we believe that that

12    sentence below the guideline range is warranted.  We

13    specifically ask for a sentence of 40 months.

14         We would ask this Court to recommend that Mr. Rogers

15    be designated to either FCI Morgantown or FCI McKean.  He's

16    researched these prisons.  He believes that these prisons

17    offer programs to him and counseling that he will continue

18    to benefit from and he thinks they will be a good fit.

19         We believe that that is the appropriate sentence and

20    would ask the Court to order it.

21         Thank you.

22              THE COURT:  Thank you very much.

23         Mr. Rogers, every defendant has the right and the

24    opportunity to speak directly to the Court at sentencing.

25    You certainly have that right now, if you wish to exercise

1     it.  If you do wish to speak directly to the Court, I ask

2     that you stand.

3                    THE DEFENDANT:  Your Honor, I just want to say

4     that, like, I really -- I really struggled a lot, like,

5     after losing my mom.  Like, I kind of, like, clinged on to

6     the people who was around me and, like, I just made some

7     really bad decisions that -- you know, I'm -- I feel that I

8     really need, like, counseling or help.  Like, I've been

9     trying to do, like, whatever I could to, like, take programs

10    as of now to, like, try to, you know, get help with my

11    issues and try to, like, have someone to talk to about what

12    I'm going through.

13        My brother, he had brung me out to Ravenna, away from

14    the Cleveland area, and he had kind of been mentoring me

15    and, like, getting my life straight.  I was working, working

16    every day at this placed called R.R. Donnelley.  I kept

17    constant employment and I was -- I had just landed an even

18    better job at a place called SoftLite.

19        I was -- my brother was also trying to get me enrolled

20    back into Kevin Coleman where I could get the mental health

21    counseling and grief counseling and things that I needed.

22        I also would like to let you know what actually

23    happened that day.  I -- I took the keys and I was going to

24    go to the store.  I was going to go to the store and I --

25    upon when I entered the car, I had a -- I had went in the

1       glove box and I did see the firearm in there and I -- I

2       touched the firearm and I slammed the glove box back and I

3       proceeded to drive to the store.  And that's how -- I was

4       pulled over by the officer right after that, so it's not

5       like I was riding around with the gun or -- or attempting to

6       do something with it.  I was not.  I went to the store and I

7       was coming right back.  The car was in my possession.  The

8       car is actually mine's now, like, I actually own that

9       vehicle.  So the car was never stolen.

10              As far as -- as far as anything else goes, I'm

11      extremely sorry for what I did.  I do understand what I did

12      was wrong and I would like to get the help that I feel that

13      I need.

14                      THE COURT:  Thank you very much.

15              All right.  As the Court assesses the particular facts

16      of this case, in light of the 3553(a) factors, it's probably

17      best to go through them.

18              With respect to the nature and circumstances of the

19      offense, I think everybody agrees, there was a traffic stop

20      on October 24th of 2021.  At the time, though, Mr. Rogers,

21      the officers determined that you were driving under

22      suspension and there were already two outstanding warrants

23      for your arrest.

24              During the stop, they observed marijuana, which you

25      have indicated you do, in fact, have a substance abuse issue

1    with respect to marijuana, but when they searched the

2    vehicle, they did, in fact, find that gun that you knew was

3    there.

4         I understand what you're saying, that you may now own

5    the car, but at the time, it was owned by your friend and

6    that's -- that's not something she's ever disputed, and I'm

7    going to credit her statements with respect to that.

8         In any event, as I already stated, you did not have

9    permission, directly or indirectly, to possess the car or

10   the firearm that day, so that charge resulted in the plea in

11   this case, what brings us here for sentencing today.

12        As to your history and characteristics, sir, and these

13   are very important for the Court to consider, you are

14   39 years old.  You grew up with two siblings.  You were

15   primarily raised by your mom, which I think has made losing

16   your mom particularly challenging for you.

17        While living paycheck to paycheck, though, your mom

18   did a remarkable job of making sure that your home was free

19   of drugs and alcohol and, as you indicated, any type of

20   abuse.  You had limited contacts with your father.  And I

21   believe he still -- I believe he did while you were growing

22   up and I believe he still lives out of state.

23        The neighborhood, though, that you grew up in, I do

24   agree with Mr. Lazarus and what is in this presentence

25   report, you grew up in a very violent environment.  You were

1       shot in the legs.  You saw neighbors be killed.  And that

2       environment has, I do believe, created a situation where you

3       suffer from depression, anxiety.  As stated in the PSR in I

4       think 2007, you received some services with respect to that

5       illness.  And that your struggles with mental health,

6       depression, and anxiety, that they do continue to this day.

7            Also, I credit that you do have a substance abuse

8       disorder and that you wish to seek treatment, not just for

9       your mental health challenges but your substance abuse

10      disorder challenges as well.

11           I also note, sir, though, that as summarized in the

12      report and summarized by the Government and acknowledged by

13      counsel, you do have a lengthy criminal history and that it

14      does involve violence and it includes convictions for

15      attempted breaking and entering, trafficking in drugs,

16      driving under suspension, attempted kidnapping, domestic

17      violence, and violations of protective orders.

18           Based on records available to the Probation

19      Department, you've also incurred multiple violations of

20      supervised release or probation, whatever term is most

21      appropriate, and that within months sometimes of being

22      released on a term, you would violate another term or you

23      would catch a new case.

24           The longest term of incarceration that you have

25      received to date is three years.  That is still a

1       significant term.  What your counsel is recommending here is

2       40.  That's just only slightly above the three years that

3       you've been imposed -- that's been imposed previously.

4            While detained here, though, I did look, and I think

5       it's Exhibit C to the sentencing memorandum, you have

6       participated in multiple programs to try to improve yourself

7       and to get the help that you need, and I do credit that.

8       And that's no -- that's no small feat.  There were several

9       certificates in Exhibit C and the Court reviewed them all.

10           As to other information that informs the need for the

11      sentence imposed -- just punishment, afford deterrence,

12      protect the public, reflect the seriousness of the offense,

13      and improve offender conduct -- you know, to your credit,

14      Mr. Rogers, I truly believe that you recognize that you need

15      help and that structured help is really what you need.  And

16      I do find that you want these and that they are tied to the

17      past losses you've experienced, which are significant, and

18      also your ongoing issues with respect to violence.

19           You are educated and you have demonstrated an ability

20      to hold a job and to maintain gainful employment, and you

21      have strong ties to the community in the sense that you have

22      remained engaged with your four children, even while

23      incarcerated, and that's not an easy thing to do, but you

24      have done it.  And you have two siblings.  I think you even

25      referenced your brother who helped you get a job at R.R.

1    Donnelley.

2        You know, these six people -- and I'm not saying these

3    are the only six people -- but these six people seem to have

4    the greatest effect on you and to be your most significant

5    positive influences.  And to your counsel's credit,

6    attaching all those letters of support were important, too,

7    to give the Court an idea of really who you can be and I

8    think who you want to be.

9        But the Court has to weigh all of the 3553(a) factors.

10   And I'm sure it does not surprise you at all to hear that

11   the Court has to consider the multiple convictions related

12   to domestic violence, the attempted kidnapping conviction,

13   the multiple violations of protective orders.  At the time

14   of this offense, you were serving a five-year term of

15   probation for such an offense.  You had two active warrants

16   at that time.

17       You were arrested in October of 2021, released, and

18   while it is not a conviction, the report that was filed on

19   April 23 of 2022 is something the Court can consider with

20   respect to the 3553(a) factors in this way:  You had just

21   violated probation.  There were two warrants.  You were

22   arrested.  And within a rather short period of time,

23   according to the victim in that instance, you were at her

24   home threatening to blow her head off.

25       It shows to the Court that you may have a very

1    significant challenge responding or complying with the laws

2    or respecting the laws that's been stated to you and what

3    your obligations are when you're serving any term.  In this

4    case, it was probation.

5        Your involvement with the criminal justice system has

6    not -- it just -- it hasn't deterred your criminal conduct

7    and it's not deterred your violence, and that's also

8    reflected in the multiple violations of probation and

9    protective orders.

10        I do recognize that you have, at different times while

11    being incarcerated or serving a sentence, you have received

12    treatment and counseling.  They have not yet led to a

13    material change, though, in your behavior.  I'm not saying

14    that they can't.  I think they can.  And I think that maybe

15    it's the benefit of age that you recognize now that that

16    kind of help really is the kind of help that I think is

17    going to put you in a position where you aren't engaged in

18    violence and you aren't violating orders and you're not

19    violating probation.  I think that you actually -- I believe

20    you as you sit here today and you say that you really don't

21    want to be in this position again, but the Court still has

22    to consider that.

23        And while I recognize that this offense is one where

24    you were not actively engaged in violence, the point,

25    though, with respect to DV convictions being considered, and

1    in this case it's a DV conviction that was an F-3 that

2    warranted you being a felon in possession, there is an

3    inherent danger that is known when those who have been

4    convicted of domestic violence offenses, like your F-3, are

5    later found to be in possession of a firearm, and it's why

6    Congress has stated that those types of offenses are

7    prohibiting.

8         You know, this has actually been really hard in terms

9    of figuring out what an appropriate sentence should be.

10   Your prior interactions with law enforcement could show the

11   Court that there had yet been an ability to deter your

12   conduct, promote respect for the law, protect the public.

13   The Court would be able to reach a different conclusion.

14        Regrettably, though, a significant period of

15   incarceration is warranted under these circumstances.  And

16   to be clear, anything within 57 to 71 months is, to the

17   Court's mind, a significant sentence.  I do not believe that

18   a sentence above the guideline range would be appropriate.

19   It would certainly be greater than necessary.

20        And while your counsel has argued very well for you,

21   and the sentencing memorandum was very well done and the

22   exhibits were very important, a sentence below that

23   guideline range wouldn't be sufficient either.  Counsel did

24   note that the range reflects the Government's concerns, and

25   I think that that's correct.

1    I think what the Court is considering now is a

2    sentence within the range of 57 to 71 months.  I do want to

3    note, though, that the Court has considered the kinds of

4    sentences available.  So the Court could go up to ten years

5    by statute.  By statute, also up to three years of

6    supervised release, probation, but to five years under

7    statute.  A $250,000 fine.  And a $100 special assessment.

8    Obviously, the guidelines are a bit different.  Here,

9    they've been calculated to result in a range of 57 to

10   71 months, up to three years of supervised release.  They do

11   not recommend probation.  Under the guidelines, the fine

12   would be 10,000 to $100,000.  And there still remains that

13   $100 special assessment.

14   So in trying to figure out what the sentence should

15   be, in light of all of that, I do want to say that I've

16   listened very carefully to your statement today.  I do

17   believe you've struggled greatly after losing your mom and

18   your uncles and you need help and you can be a very

19   productive citizen.  I believe that.  And your employment

20   history and your relationship with your children certainly

21   supports that.

22   And I've listened to all the arguments your counsel

23   has made and he has reinforced your commitment to needing

24   help, and the importance of these letters of support, and

25   also that you've done the research for FCI Morgantown or

1     McKean, and I think that that's important as well.

2     40 months, though, while I respect the position of your

3     counsel, it is only slightly more than the most significant

4     sentence that's been imposed to date and that has not

5     deterred conduct, so 40 months, the Court finds, would not

6     be sufficient in this instance.

7          With respect to the Government's arguments, I think

8     with what I've stated before, that those are important

9     arguments.  And I do note that the type of violence

10    described by the Government is significant, and the Court

11    takes that into consideration as well.

12         So with that, the defendant's total offense level is

13    19, the criminal history category is V, pursuant to the

14    Sentencing Reform Act of 1984, and Section 3553(a), it is

15    the judgment of the Court that the defendant, Calvin R.

16    Rogers, is hereby committed to the custody of the Bureau of

17    Prisons to be imprisoned for a term of 68 months.

18         Upon release from imprisonment, you shall be placed on

19    a term of supervised release for a term of three years.

20         Within 72 hours of release, sir, you will report in

21    person to the U.S. Pretrial Service and Probation Office in

22    the sentencing district or in the district to which you're

23    released.

24         Based on my review of the record, the Court will not

25    be imposing a fine.  It waives the fine in this instance

1    because you do not have the ability to pay.

2         The special assessment, though, is mandatory.  The

3    Court can't waive that.  So the Court does impose a special

4    assessment of $100, which is due immediately.

5         With respect to mandatory and standard conditions,

6    while on supervision, you must comply with the mandatory and

7    standard conditions that have been adopted by this Court and

8    set forth in Part D of the presentence report.  And to be

9    clear, those will be, let's see, paragraph 84 as it relates

10   to all of those standard conditions.

11        With respect to domestic violence, it does not find

12   that it has the ability to make that a mandatory condition.

13   It will address that with respect to the special conditions.

14        You shall participate in an approved program of

15   substance abuse testing and/or outpatient or inpatient

16   substance abuse treatment, as directed by the supervising

17   officer that's assigned to you, and abide by the rules of

18   the treatment program.  The probation officer will supervise

19   your participation in this program.

20        You shall not obstruct or attempt to obstruct or

21   tamper in any way with the efficiency or accuracy of any

22   prohibited substance testing.

23        With respect to mental health treatment, you will be

24   ordered to undergo a mental health evaluation and/or

25   participate in a mental health treatment program and to

1    follow the rules and regulations of that program.  The

2    probation officer, in consultation with the treatment

3    provider, will supervise your participation in the program.

4    This will include treatment for anger management and

5    domestic violence as well.

6         Search and seizure.  You must submit your person,

7    property, house, residence, vehicles, papers, computers, as

8    defined in Section 1030(e)(1), other electronic

9    communications or data storage devices or media, or office

10   to a search conducted by a United States probation officer.

11   Failure to submit to a search may be grounds for revocation

12   of release.  You must warn any other occupants that the

13   premises may be subject to searches pursuant to this

14   condition.

15        The probation officer may conduct a search under this

16   condition only when reasonable suspicion exists that you

17   have violated a condition of supervision and that the areas

18   to be searched contain evidence of this violation.  Any

19   search must be conducted at a reasonable time and in a

20   reasonable manner.

21        With respect to the mandatory conditions, I will

22   correct myself, they're set forth in paragraph 73, and they

23   will include subpart 1, 2, 3, and 7 as we addressed with

24   respect to the special condition.

25        All right.  At this time, Mr. Rogers, you do have

1    appellate rights and the timeline to preserve those rights

2    is rather short, it's 14 days from the time the Court enters

3    its judgment or within 14 days of a filing of a notice of

4    appeal by the Government.

5        If requested, the Clerk will prepare and file a notice

6    of appeal on your behalf.  If you cannot afford the cost of

7    an appeal or for appellate counsel, you have the right to

8    apply for leave to appeal in forma pauperis, which means you

9    can apply to have the Court waive that fee.  On appeal, you

10   can also request court-appointed counsel.

11       Do you understand that there is a very limited 14-day

12   window?

13                   THE DEFENDANT:  Yes, Your Honor.

14                   THE COURT:  All right.  And, Mr. Lazarus, will

15   you discuss that with your client and ensure that if he

16   wishes to exercise his appellate rights that he preserves

17   them within the 14 days?

18                   MR. LAZARUS:  Yes, I will, Your Honor.

19                   THE COURT:  Thank you.

20       I also note that there is a preliminary motion for an

21   order of forfeiture and the corresponding order for

22   forfeiture.  I am prepared to sign it.

23       Is there any objection by the defendant?

24                   MR. LAZARUS:  No, Your Honor.

25                   THE COURT:  All right.  And you had a chance

1    to review it; correct?

2              MR. LAZARUS:  Yes, I did.

3              THE COURT:  All right.  Thank you.

4         The Court will sign that.

5         With respect to credit for time served and the

6    recommendations with respect to FCI Morgantown and McKean,

7    the Court will also note those.

8         At this time, are there any objections on behalf of

9    the Government?

10             MR. DOROODIAN:  No, Your Honor.

11        Thank you.

12             THE COURT:  On behalf of the defendant.

13             MR. LAZARUS:  One moment, Your Honor.

14             THE COURT:  Absolutely.

15                (Discussion off the record)

16             MR. LAZARUS:  Thank you, Your Honor.

17        We would like to reiterate our objection to the

18   two-level enhancement as previously discussed.

19        And my client would like to note an objection to the

20   failure of the Court to give a variance.

21        Thank you.

22             THE COURT:  Very well.  Those are noted for

23   the record.

24        At this time, that concludes this hearing.

25        Mr. Rogers, I do hope that the treatment is beneficial

1    to you and I do wish you luck.

2                    THE DEFENDANT:  Thank you, Your Honor.

3                    THE COURT:  We are adjourned.

4                         -  -  -

5              (Proceedings concluded at 3:23 p.m.)

6

7

8

9                    **C E R T I F I C A T E**

10        I certify that the foregoing is a correct transcript
     of the record of proceedings in the above-entitled matter
11   prepared from my stenotype notes.

12             */s/ Sarah E. Nageotte*              *2/10/2023*
               SARAH E. NAGEOTTE, RDR, CRR, CRC          DATE
13

14

15

16

17

18

19

20

21

22

23

24

25